## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

K.T.S.,[1]

      Plaintiff,

v.

                                Case No. 22-1015-DDC

KILOLO KIJAKAZI,
Acting Commissioner of the Social
Security Administration,

      Defendant.

_____

## MEMORANDUM AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, as amended.  Plaintiff's brief asks the court to reverse the Commissioner's decision denying the claim and remand the claim to the Commissioner for a new administrative hearing.  Doc. 11 at 15.  The Commissioner has filed a response brief, opposing plaintiff's requests.  Doc. 13.  She asks the court to affirm the Commissioner's decision.  *See id.*

The court concludes that the substantial evidence supports the findings in the ALJ's decision.  The court thus affirms the Commissioner's decision denying plaintiff benefits, explaining why, below.

---

[1]      The court makes all its Memorandum and Orders available online.  Therefore, as part of the court's efforts to preserve the privacy interests of Social Security disability claimants, it has decided to refer to the plaintiff in these cases only by plaintiff's initials.

## I.   Background

In 2019, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income.  Doc. 10 at 314–22 (AR 308–16).  Plaintiff alleged disability beginning on July 18, 2019.  *Id*. at 314 (AR 308).  After the Social Security Administration initially denied plaintiff's claims in February and May 2020, plaintiff received an administrative hearing.  *Id*. at 16 (AR 10).  The ALJ conducted a telephone hearing on April 28, 2021, where plaintiff appeared and testified.  *Id*.

On May 20, 2021, the ALJ issued a written decision concluding that plaintiff wasn't disabled, as the Social Security Act defines that term, between July 18, 2019 and the decision's date.  *Id*. at 13–33 (AR 7–27).  The Appeals Council denied plaintiff's request for review.  *Id*. at 7–9 (AR 1–3).  Having exhausted the proceedings before the Commissioner, plaintiff now seeks judicial review.  In short form, she asks the court to reverse the final decision denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income.

## II.   Legal Standard

### A.   Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of the Commissioner's final decisions and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to two questions:  Whether substantial evidence in the record supports the factual findings, and whether the Commissioner applied the correct legal

standards.  *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it is "more than a mere scintilla[.]"  *Noreja*, 952 F.3d at 1178 (quotation cleaned up).  While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation cleaned up).  But, also, they don't accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational."  *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted).  When courts decide whether substantial evidence supports the Commissioner's decision, they "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]"  *Id.* (citation omitted).  "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'"  *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis."  *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)).  But such a failure justifies reversal only in "'appropriate circumstances'"—applying an improper legal standard doesn't require reversal in all cases.  *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-

SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*).  Some errors are harmless and require neither remand nor additional consideration.  *See, e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

### B.      Disability Determination

Claimants seeking Disability Insurance Benefits and Supplemental Security Income bear the burden to show that they are disabled.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and 20 C.F.R. § 416.920 (governing claims for Supplemental Security Income)).  As summarized by the Tenth Circuit, this familiar five-step process operates in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . .  At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (quotation cleaned up); *accord* 20 C.F.R. § 404.1520(a)(4), 20 C.F.R.
§ 416.920(a)(4).  The claimant must bear the "burden of proof on the first four" of the five step
sequential process, but the burden shifts to the Commissioner "at step five to show that claimant
retained the RFC to 'perform an alternative work activity and that this specific type of job exists
in the national economy.'"  *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting
*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis ends if the Commissioner
determines at any point that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Hum.
Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not
disabled at any point in the analysis, the review stops.").

## III.  Analysis

The ALJ found that plaintiff has the following severe impairments:  obesity, degenerative
disc disease of the cervical and lumbar spines, early osteoarthritis in the right knee, right
shoulder dysfunction, chronic obstructive pulmonary disease (COPD), asthma, depressive
disorder, anxiety, and posttraumatic stress disorder (PTSD).  Doc. 10 at 19 (AR 13).  But the
ALJ concluded that plaintiff's severe impairments—both individually and in combination with
one another—did not meet the severity of one of the impairments listed in 20 C.F.R. pt. 404.  *Id*.
Instead, the ALJ determined, plaintiff has the RFC "to perform sedentary work as defined in 20
[C.F.R. §§] 404.1567(a) and 416.967(a)[.]"  *Id.* at 22 (AR 16).  Specifically, the ALJ found,
plaintiff:

> can lift 10 pounds occasionally and less than 10 pounds frequently; stand and/or
> walk for 2 hours out of an 8 hour work day with normal breaks; sit for up to 6 to 7
> hours out of an 8 hour work day with normal breaks; and push and pull the same
> weights; except [plaintiff] needs the opportunity to use an assistive device such as
> a cane to ambulate to and from the work station; occasionally climb ramps and
> stairs; may not climb ladders, ropes and scaffolds; occasionally stoop, kneel,
> crouch, crawl, and balance as defined in the Selected Characteristics of Occupations
> of the Dictionary of Occupational Titles; should avoid more than occasional

exposure to extreme cold and heat, as well as vibration; should avoid all exposure to hazards, such as unprotected heights and machinery with moving mechanical parts; can have no more than occasional[ ] exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles; can understand and remember short and simple instructions and can perform simple routine repetitive tasks with normal breaks; can have occasional interaction with co-workers but may not perform tasks in tandem or as an integral part of a team; can have occasional interaction with the general public; and can adapt to changes in the work setting that are consistent with the aforementioned limitations.

*Id.* Based on this RFC finding, the ALJ determined that plaintiff could not perform any past relevant work. *Id.* at 31 (AR 25). But, in contrast and given plaintiff's age, education, work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy" that plaintiff can perform as delineated in 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a). *Id.* at 32 (AR 26) Thus, at step five of the analysis, the ALJ determined that plaintiff was not disabled—applying the Social Security Act's definition of that term—from July 18, 2019 to the date of the decision, May 20, 2021. *Id.* at 33 (AR 27).

Plaintiff now asks the court to reverse the ALJ's decision, limiting her request to a single issue. She argues that the ALJ erred by failing to explain the record evidence that supported the RFC's limitation in adaptation. Doc. 11 at 9. This limitation, plaintiff argues, conflicts with the medical and nonmedical evidence in the record. *Id.* The ALJ acknowledged "later evidence of worsening anxiety does support the additional limitations" implemented in the RFC. Doc. 10 at 31 (AR 25). But, the ALJ concluded, the reports of plaintiff's more severe impairments bear "no relationship to [plaintiff's] generally normal mental status findings and limited complaints throughout the record." *Id.* at 30 (AR 24). The ALJ thus concluded that despite plaintiff's "allegations, further limitations are not borne out by her exam findings, which document only rare abnormal findings with inconsistencies in her testing and presentation when they were abnormal during her consultative exam." *Id.*

Plaintiff contends that the ALJ's adaptation limitation "conflicted with every medical opinion of record, and she subsequently failed to explain what evidence led to [the] adaptation limitation in the RFC."  Doc. 11 at 10.  Plaintiff argues that "the record shows that [plaintiff] suffered from significant limitations in [her] ability to adapt and manage, particularly after the onset of the pandemic."  *Id.* at 11.  While the "ALJ recognized this increase of symptoms affecting her ability to adapt and manage[,]" plaintiff asserts that, "the ALJ concluded that [plaintiff] retained the ability to adapt to changes in a work setting" without explaining "what evidence supported that conclusion."  *Id.*

To support her case, plaintiff states that "every medical opinion from an examining or treating source indicated marked to extreme limitations in adaptation, and taken as a whole, they show that [plaintiff's] impairments continued to worsen as the pandemic lingered."  *Id.*  She cites documentation from Advanced Practice Registered Nurse (APRN) Mariam Njoku in September 2019, Doc. 10 at 576–77 (AR 570–71), psychologist Ted Wunderlich in January 2020, *id.* at 646–50 (AR 640–44), APRN Njoku in August 2020, *id.* at 690–92 (AR 684–86), and licensed clinical social worker (LCSW) Randee Olive in February 2021, *id.* at 761–66 (AR 755–60).  Doc. 11 at 11.  Plaintiff contends these documents report a progression from "moderate" to "extreme" impairment in several areas.

Contrary to plaintiff's assertions, the current SSA regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  So, under these regulations, the "SSA is no longer required to 'give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion[.]'"  *Melanie Lynne H. v. Saul*, No. 20-

1028-JWL, 2020 WL 6262193, at *8 (D. Kan. Oct. 23, 2020) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) and discussing effect of latest regulations for evaluating medical opinions).  Instead, "the SSA will consider each medical source's opinions using five factors[:]  supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding." *Monique M. v. Saul*, No. 19-1345-JWL, 2020 WL 5819659, at *4 (D. Kan. Sept. 30, 2020) (citing 20 C.F.R. §§ 404.1520c(c)(1–5), 416.920c(c)(1–5) (2017)).  The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).  An ALJ must consider the supportability and consistency factors, but the regulations don't require consideration of the other three factors.  *Id.*

The ALJ may discount medical evidence "if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (quotation cleaned up).  But the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (quotation cleaned up).

The question then, for a district court, is "whether the ALJ properly applied the regulations to determine the persuasiveness of the evidence based primarily on the supportability and consistency factors as applied to that evidence." *Monique M.*, 2020 WL 5819659, at *6.  If the ALJ determined the persuasiveness of the evidence properly, "the question remaining is whether substantial evidence in the record (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) supports the ALJ's decision." *Id.*  "An ALJ is not entitled to pick and choose from an uncontradicted medical opinion, taking only the parts that are

favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Instead, the ALJ must explain why she adopts some findings but does not adopt others.  *Id.*

In the ALJ's RFC finding, the ALJ acknowledged and properly documented plaintiff's

alleged mental impairment symptoms, and she evaluated the supportability and consistency of

each report.  Doc. 10 at 27–31 (AR 21–25).  The ALJ reasonably concluded plaintiff's mental

impairments allow her "to perform simple tasks and instructions, and engage in limited

interaction with others[.]"  *Id*. at 31 (AR 25).

In particular, the ALJ noted plaintiff's appointments with APRN Njoku, who asserted

that plaintiff displayed "'marked' limitations in almost all areas of functioning, including" three

of four categories under adaptation on the "Medical Source Statement" sheet.  *Id*. at 27 (AR 21);

*see also id.* at 576–77 (AR 570–71).  But the ALJ held that APRN Njoku checked the boxes

corresponding to these limitations despite "largely unremarkable examinations of" plaintiff,

resulting in conclusions that were inconsistent "with the very limited abnormal findings, noted in

her treatment notes, and [plaintiff's] limited allegations, consisting primarily of isolating

behavior."  *Id.* at 27 (AR 21).  The ALJ also noted that plaintiff's later meetings with APRN

Njoku in 2020 show no change from 2019 until July 2020, when "she was seen, while wearing

gloves, a mask, glasses, and carrying Lysol, [and] alleged a four year history of panic attacks that

is not described in prior records."  *Id.* at 28 (AR 22) (citing *id.* at 683 (AR 677)).  Then, in

August 2020, APRN Njoku opined that plaintiff faced "greater limitations than in the prior

opinion, although the only change noted in her treatment notes was the complaints of panic."  *Id.*

at 29 (AR 23) (citing *id.* at 690–92 (AR 684–86)).  APRN Njoku alleged plaintiff "had a

'complete inability to function' outside of her house due to panic attacks[,]" but also plaintiff

"reported she was spending time outside."  *Id.* (citing *id.* at 744 (AR 738)).  Plaintiff also hadn't

"sought medical treatment for or during [ ] panic attacks, and panic attacks [were] not observed by her mental health or physical medical providers." *Id.* Based on these observations, the ALJ concluded that "there is simply not evidence to support the extreme limitations alleged by Ms. Njoku" and "[a]s a result, this opinion was not persuasive" to the ALJ's analysis. *Id.*

The ALJ also noted documentation from Dr. Wunderlich, who "did opine that [plaintiff] was 'markedly' limited in the ability to maintain appropriate social interactions with others." *Id.* at 28 (AR 22) (citing *id.* at 649 (AR 643)). During her appointment with Dr. Wunderlich, plaintiff "had relatively poor grooming, and she was tearful and upset throughout the exam." *Id.* (citing *id.* at 648 (AR 642)). Also, plaintiff's "presentation was emotional and she had poor eye contact; however, she was cooperative throughout the exam." *Id.* (citing *id.* at 648 (AR 642)). But plaintiff's "alleged anxiety and panic [were] not well supported by her other treatment records, and [her] presentation [was] not described during other treatment visits." *Id.* Particularly, Dr. Wunderlich "noted that [plaintiff] 'relied heavily on the approach of not recalling information during the interview.'" *Id.* (quoting *id.* at 649 (AR 643)). This behavior "resulted in performance 'significantly below what would be expected [even] for individuals with substantially lower intellectual capacity[,]'" which "raised issues with the reliability of her performance and reported symptoms." *Id.* (quoting *id.* at 649 (AR 643)). Because of these issues, the ALJ determined Dr. Wunderlich "could not provide an opinion in some areas of functioning." *Id.* Ultimately, the ALJ found, "while [Dr. Wunderlich's] opinion [was] consistent with this exam, it [was] not consistent with the overall record" and "not entirely persuasive in this case." *Id.*

Finally, the ALJ discussed reports from LCSW Olive, who "provided multiple opinions in this case[,]" but "had treated [plaintiff] for only a short period, from September 2020 to

February 2021 at the time of the most recent opinion." *Id.* at 29 (AR 23) (citing *id.* at 760–69 (AR 754–63)). As a consequence, LCSW Olive had "no insight into the claimant's typical condition or progression since the alleged onset date." *Id.* Documents from LCSW Olive "described serious limitations and symptoms in her treatment notes, which [were] contradicted by exam findings from Soma [Recovery, where plaintiff also received treatment] over the same period." *Id.*; *compare id.* at 760–69 (AR 754–63), *with id.* at 771–73 (AR 765–67). The ALJ found that LCSW Olive's "opinions are quite extreme[,]" alleging that plaintiff "has 'no useful functioning' (the definition of 'extreme') in all areas of functioning." *Id.* at 30 (AR 24) (quoting *id.* at 761–62 (AR 755–56)). This finding bore "no resemblance to [plaintiff], even at her worst, in the record" and instead appeared "appropriate only for someone receiving 24/7 inpatient care." *Id.* From this examination, the ALJ determined that LCSW "Olive's opinions are unsupported by medical evidence" and "even her own treatment notes do not describe this level of limitation[,]" thus finding her opinions "not persuasive in this case." *Id.*

Based on the ALJ's decision, the ALJ adequately explained why she found the documentation provided by plaintiff's treating providers unpersuasive. In sum, the ALJ determined that the opinions categorizing plaintiff's symptoms as "marked" or "extreme" weren't (a) supported by or (b) consistent with the record. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring ALJ to evaluate supportability and consistency of medical opinions). For each medical opinion in the record bearing on plaintiff's adaptation limitations, the ALJ stated reasons why she found them both "internally inconsistent [and] inconsistent with other evidence." *Pisciotta*, 500 F.3d at 1078 (quotation cleaned up).

In contrast to opinions by plaintiff's treating providers, the ALJ found persuasive the opinions of the state agency consultants. Doc. 10 at 30–31 (AR 24–25). Plaintiff argues that

those opinions don't "constitute substantial evidence to support the adaptation RFC limitation because subsequent evidence, as recognized by the ALJ, indicated worsening conditions for which these consultants did not account."  Doc. 11 at 12 (citing *Woods v. Berryhill*, No. 16-4059-DDC, 2017 WL 4284972, at *8 (D. Kan. Sept. 27, 2017)).  But *Woods* held that the ALJ improperly had assigned weight to the non-treating doctor's opinion that ignored treatment notes in the record.  *Woods*, 2017 WL 4284972, at *8.  Here, nothing suggests that the non-treating physicians ignored any treatment notes.  Dr. Kevin Donovan provided the latest report, in May 2020, before plaintiff began reporting her paranoia symptoms and panic attacks.  Doc. 10 at 30 (AR 24) (citing *id.* at 141–78 (AR 135–72)).  And, as the court already has discussed, the ALJ amplified how the later treatment notes contradicted both themselves and the record, demonstrating that they were unpersuasive.  *Id.* at 27–30 (AR 21–24).  The ALJ held that "further limitations are not borne out by her exam findings, which document[ed] only rare abnormal findings with inconsistencies in her testing and presentation when they were abnormal during her consultative exam."  *Id.* at 30 (AR 24).  Even so, after comparing Dr. Donovan's opinion to an earlier one from February 2020, the ALJ noted that "while there may have been some improvement to support Dr. Donovan's reduced restrictions, later evidence of worsening anxiety does support the additional limitations indicated in this opinion."  *Id.* at 31 (AR 25).  Thus, not only did the ALJ consider the later treatment notes, but also she *explicitly* increased plaintiff's limitation in the RFC because of them.

The ALJ determined that the state agency consultants—unlike plaintiff's treating providers—provided evaluations both supported by and consistent with other evidence in the record.  *See* 20 C.F.R. § 404.1520c(b)(2) (requiring ALJ to evaluate supportability and consistency of medical opinions).  And where the ALJ found the consultants' opinions

inconsistent with the record due to evidence arising after they wrote their opinions, she adjusted plaintiff's RFC to account for those inconsistencies. By evaluating the supportability and consistency of the differing opinions, the ALJ adequately explained and cited medical record evidence supporting the RFC findings about plaintiff's mental impairments. *Id.* at 27–31 (AR 21–25). Plaintiff's differing interpretation of the record evidence doesn't reveal that the ALJ erred. *See Lax*, 489 F.3d at 1084 (explaining that the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence" and instructing that courts may not "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo" (quotation cleaned up)). Thus, medical evidence in the record supports the ALJ's RFC determination.

Plaintiff also alleges that the ALJ's RFC limitation "conflicts with the nonmedical evidence." Doc. 11 at 14. To support this contention, plaintiff cites her Function Report where she "explained that she did not handle stress well because of anxiety and feeling overwhelmed. She similarly stated she did not like changes because they confused her and she felt overwhelmed." *Id.* at 13 (citing Doc. 10 at 381 (AR 375)). Plaintiff also cites her testimony at the hearing, asserting that "she didn't do well around people because she felt like they were watching her, so she would begin to feel nervous and shake, and . . . when she experienced those symptoms, she felt like she could start crying and that she may need to 'run out' so it was very stressful for her." *Id.* at 13–14 (citing Doc. 10 at 56–57 (AR 50–51)). Plaintiff asserts that this evidence conflicts with the ALJ's RFC, which "allows for [plaintiff] to have occasional interaction with coworkers and the general public, and it implies an unlimited ability to be around supervisors." *Id.* at 14.

At its core, plaintiff's argument asks the court to accept plaintiff's self-reported symptoms, even though nothing else in the record demonstrates that a treating professional had observed or substantiated them.  Plaintiff's argument also asks the court to adopt her view of how the ALJ should have incorporated those symptoms into the RFC.  But the "question for the court is not whether [p]laintiff can provide an evidentiary basis to support her view . . . , but whether the record evidence supports the ALJ's findings in this regard."  *Frakes v. Berryhill*, No. 16-1066-JWL, 2017 WL 1354863, at *4 (D. Kan. Apr. 13, 2017).  Here, the administrative record does support the ALJ's findings.  As already explained, the ALJ accounted for the inconsistencies in plaintiff's treatment records, but also included additional limitations in the RFC to accommodate plaintiff's "later evidence of worsening anxiety[.]"  Doc. 10 at 31 (AR 25).  And the court may not "'reweigh the evidence or substitute [its] judgment for the Commissioner's'" by deciding plaintiff's self-reported symptoms outweigh the other record evidence.  *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).  In short, the nonmedical evidence in the record doesn't demonstrate that the ALJ erred by not giving that evidence much weight.

In sum, the ALJ considered the whole record and appropriately cited reasons for accepting and rejecting the evidence used to support the RFC determination, including plaintiff's subjective reports of deepening anxiety and paranoia.  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (explaining that an ALJ "is not required to discuss every piece of evidence" in the administrative record as long as the ALJ's findings "demonstrate that the ALJ considered all of the evidence" as a whole).  Plaintiff hasn't shown that the ALJ erred in the RFC assessment.

## IV.   Conclusion

The ALJ's decision is supported by substantial evidence in the record and applies the proper legal standard.  Reviewing courts can't reweigh the evidence, and thus they may evaluate only this question:  whether the ALJ accounted for the substantial evidence.  *Lax*, 489 F.3d at 1084.  Here, the court finds that the ALJ properly reconciled the medically observable evidence, the opinions of treating and non-treating physicians and mental health professionals, and plaintiff's self-reported symptoms when deciding on the RFC's limitation on adaptation.  After considering the briefs submitted and conducting its own review of the administrative record, the court finds that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is affirmed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 28th day of March, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

15